UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAYCO PRODUCTS, LLC,

       Plaintiff,

v.

DORMAN PRODUCTS, INC.,

       Defendant.

_____/

Case No. 09-cv-13139

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER GRANTING IN PART AND
## DENYING IN PART DEFENDANT'S MOTION TO DISMISS (docket no. 6)

This is an intellectual property action. Plaintiff Dayco Products, LLC ("Dayco") alleges in a six count complaint that Dorman Products, Inc. ("Dorman") has infringed on Dayco's protected trade dress and has engaged in false advertising, all in violation of the federal Lanham Act and Michigan's common law. Dorman has moved to dismiss all six counts for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court grants the motion in part and denies it in part.

## FACTS AND PROCEDURAL HISTORY

The following is alleged in the complaint or found in the attachments thereto.

Dayco is a recognized leader in the manufacture and supply of products to the automotive industry. Compl. ¶ 8. It entered the automatic belt tensioner[1] original equipment manufacturer ("OEM") market in 1984 and later expanded its business in 1997 to include the manufacture and sale of automatic belt tensioners in the automotive parts aftermarket. *Id.* ¶ 10. Dayco pioneered selling automatic belt tensioners in the aftermarket.

---

[1] A belt tensioner is a device that presses against a belt carrying rotary power from an engine to automotive subsystems, such as the power steering and water pump, to maintain proper belt tension. Compl. ¶ 9.

*Id.* It remains a market leader in both the original equipment ("OE") and aftermarket belt tensioner markets. *Id.* ¶ 12.

Dayco alleges that its automatic belt tensioners incorporate "distinctive, aesthetic, non-functional design elements" including, *inter alia*, the "overall configuration and appearance of the products." It alleges that its unique appearance has come to be associated with Dayco in the minds of customers. *Id.* ¶ 13. Dayco has included in many of its tensioners a "distinctive, arbitrary and non-functional six-petal rosette design," and a design consisting of three rays. The unique appearances of these two designs has come to be associated in the minds of consumers with belt tensioners marketed by Dayco. *Id.* ¶¶ 14-15. Dayco has used the designs and the "unique overall product appearance trade dress of its products" for many years and has gained substantial goodwill in the dresses. *Id.* ¶ 16.

In 2009, defendant Dorman entered the aftermarket automatic belt tensioner business. Its tensioners appear to be Dayco tensioners, but they are not, nor is Dorman associated with Dayco. *Id.* ¶ 17. In addition to copying the overall look of Dayco's tensioners, Dorman has adopted the rosette and triple ray designs in connection with its products, and includes them in some of its products. *Id.* ¶ 18. The overall configuration of each Dorman tensioner is identical to the corresponding Dayco tensioner down to minute, arbitrary and nonfunctional details giving the clear impression that it is manufactured by the same company, thus creating confusion respecting the origin of the tensioners. The copying was not necessary to make a functionally equivalent product. *Id.* ¶ 20.

The Complaint goes further than the allegations summarized above, and addresses individual automatic belt tensioners made and sold by Dorman; Dayco alleges that the trade dress of its individual tensioners has been copied and incorporated into Dorman's

tensioners. The allegations relating to a particular tensioner also include photographs of the Dayco and Dorman tensioners, as well as photographs of other third-party tensioners, demonstrating the similarity in appearance between Dayco and Dorman tensioners and the assertion that the copied trade dress is non-functional. *Id.* ¶¶ 24-43.

Dorman tensioners are not made by Dayco or any entity associated with Dayco. Dayco makes its tensioners in Arkansas; Dorman tensioners are made in China. *Id.* ¶ 45. Dayco and Dorman's products are sold in the same channels of commerce and same general class of potential consumers. *Id.* ¶ 51. The remainder of the relevant allegations are set forth in the body of the analysis below.

Dayco has sued Dorman for the following: 1) misrepresentation of origin / trade dress infringement; 2) common law unfair competition; and 3) four separate counts of false advertising. Dorman has moved to dismiss every count for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

A. <u>Legal Standard - Rule 12(b)(6)</u>

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 233-34 (3d ed. 2004)). Accordingly, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "'To survive a motion to dismiss under Rule 12(b)(6) motion, a complaint must contain either direct or inferential allegations respecting all the material elements to

sustain a recovery under some viable legal theory.'" *Hunter v. Sec'y of the U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Advocacy Org. for Patients and Providers v. Auto Club. Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999)).

In assessing a motion brought pursuant to Rule 12(b)(6), a court must presume as true all well-pleaded factual allegations and draw all reasonable inferences from those allegations in favor of the non-moving party. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). Although the pleading standard is liberal, and a court must accept as true all *factual* allegations in the complaint, it need not accept as true any legal conclusion alleged therein, even if couched as a factual allegation. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1945 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a). This requires that a claimant put forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the requisite elements of the claim]." *Bell Atl.*, 550 U.S. at 556. Thus, although "a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl.*, 550 U.S. at 555). Therefore, the Court will grant a Rule 12(b)(6) motion only in cases where there are simply not "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

II.  Analysis

A.  Counts One and Two - Trade Dress Infringement
    under 15 U.S.C. § 1125(a)(1)(A) and Michigan Common Law

Dayco alleges in its first two counts that Dorman has infringed on Dayco's protected trade dress in violation of the federal Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and Michigan's common law of unfair competition.[2]  Generally, a party must plead and prove the following to recover for trade dress infringement: "1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar." *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d at 619, 629 (6th Cir. 2002).  Dorman does not challenge the sufficiency of Dayco's allegations on these elements.  Rather, it alleges that the complaint fails on the "conceptually precedent" issue of identifying any trade dress at all.  *See id.*

Dorman reads the complaint as alleging infringement of Dayco's "broad formulaic trade dress" covering its entire line of automatic belt tensioners.  "A plaintiff, seeking protection for a series or line of products, must first demonstrate that the series or line has a recognizable and consistent overall look."  *See Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 173 (3d Cir. 2000).  And only after the plaintiff establishes the existence of

---

[2] Dorman asserts that Michigan law relating to unfair competition is consistent with the general laws of trademark, trade dress, and unfair competition, including the Lanham Act. It cites *Schreiber Mfg. Co. v. Saft America, Inc.*, 704 F. Supp. 759, 769 (E.D. Mich. 1989), which in turn relies upon *Empire Nat'l Bank v. Empire of Am.*, 559 F. Supp. 650 (W.D. Mich.1983). Both cases support Dorman's proposition. *See also Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 n.1 (6th Cir. 1991). Dayco does not dispute this claim.  Since counts one and two rise or fall together, the Court addresses both counts by discussing the Lanham Act claim.

recognizable trade dress for the entire line of products should a court then consider the three essential elements of a trade dress infringement claim. *Id.* If the plaintiff is unable to demonstrate a "consistent overall look" across the relevant product line, it fails the threshold step of alleging any trade dress at all, and the defendant must prevail. *Id.* Dorman asserts that the arguably distinctive rosette and triple ray designs do not appear on every single belt tensioner, resulting in the lack of a consistent overall look across the entire product line. As a result, Dorman argues, Dayco cannot meet its threshold burden of alleging any actionable trade dress.

With due deference to the thoughtful work of Dorman's counsel in constructing the argument, it is a red herring, for a fair reading of the complaint demonstrates that Dayco is not alleging a broad formulaic trade dress spanning its entire automatic belt tensioner line. Rather, it is alleging the infringement of individual trade dresses specific to each belt tensioner. *See* Pl. Resp. Br. at 13 ("The Complaint pleads twenty separate trade dresses, and one individual infringement of each of those trade dresses."). Paragraphs 24-43 demonstrate this approach by identifying with specific model numbers and photographs each Dayco's belt tensioner, along with the allegedly infringing Dorman tensioner. Each allegation also includes a photograph of a non-infringing third-party tensioner in order to demonstrate that each Dayco dress is non-functional. The reference in ¶ 47 to the "similarity in the overall appearance of *individual products of Dayco and Dorman*" also demonstrates this approach.[3] Compl. ¶ 47.

---

[3] Dorman relies on the allegations at paragraphs 14-16 to support its reading of the complaint. Paragraph 14 states that "Dayco has incorporated *in many of its products* a . . . six-petal rosette design (the "Rosette Design") in the spring housing of many of its belt tensioners." Compl. ¶ 14 (emphasis added). Paragraph 15 alleges the same thing with respect to the triple ray design. *Id.* ¶ 15. Paragraph 16 states that Dayco has used the rosette and triple ray designs, "and the unique overall product appearance trade dress of its products" in connection with its line of products. *Id.* ¶ 16. Simply because these

Dayco has not alleged one formulaic trade dress spanning multiple products, nor could it do so, because the tensioner product line does not share a consistent overall look. *See Abercrombie*, 280 F.3d at 633 n.11. As the Sixth Circuit wrote in *Abercrombie*, however, "[there is] no reason why a single producer cannot seek protection of dissimilar forms of its trade dress as long as each form independently meets the two conditions of protectibility." *Id.* (citing – what is now – McCarthy on Trademarks § 8:3 (4th ed. 2001)). Because Dayco is not attempting to assert a consistent overall look across its entire line of automatic belt tensioners, its failure to allege a consistent overall look is not fatal to its individual claims of trade dress infringement.

Dorman next argues that Dayco's complaint is deficient because Dayco has failed to specifically identify the discrete elements of the individual trade dresses embodied in its automatic belt tensioners. Dorman focuses on the allegations at paragraphs 13, 16, & 57 to make its point. Although these allegations merely recite the elements of trade dress infringement, and simply identify the trade dress as incorporating "distinctive, aesthetic, non-functional design elements, including, *inter alia*, the overall configuration and appearance of the products," Compl. ¶ 13, these are not the only allegations in the 144-page (including attachments) complaint. These allegations "provide the framework of the complaint" and are "supported [elsewhere] by factual allegations." *Iqbal*, 129 S. Ct. at 1950. Specifically, the photographs of each Dayco automatic belt tensioner adjacent to the

---

distinctive designs appear in "many of [Dayco's] products," does not necessarily mean that Dayco seeks protection over its entire family of automatic belt tensioners. The more appropriate reading of these allegations, and the one the Court adopts here, is that Dayco has begun to list the specific elements of its trade dresses that bear those designs. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *see also Abercrombie*, 280 F.3d at 632 & n.8 (reading plaintiff's "perplexing" complaint in its most "reasonable form" so as to do justice).

corresponding Dorman tensioner, and the corresponding non-infringing third-party tensioner, provide the requisite factual allegations in pictorial form.

The Sixth Circuit, and district courts within it, agree that including photographs of the relevant trade dress in the complaint satisfies, at least during the early stages of the litigation before discovery has commenced, the general requirement that the elements of trade dress be specifically identified and articulated in a list. *See Abercrombie*, 280 F.3d at 635 ("A complaint is neither an injunction nor a judgment; it merely puts the defendant on notice of the plaintiff's claims . . . . *Had the case proceeded further*, Abercrombie would have been expected to list the elements of the designs and the unique combinations it sought to protect, which enumeration would have enabled the district court to craft a sufficiently specific injunction had such proved warranted." (emphasis added)); *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 635 F. Supp. 2d 632, 641 (E.D. Mich. 2008) (Borman, J) (citing *Twombly*, 127 S. Ct. at 1974 and *Abercrombie*, 280 F.3d at 629)); *see also Gen. Motors Corp. v. Lanyard Toys, Inc.*, 468 F.3d 405, 415 (6th Cir. 2006) ("[I]t will not do to solely identify in litigation a combination as 'the trade dress.' Rather, the discrete elements which make up that combination should be separated out and identified in a list." (quoting McCarthy on Trademarks § 8:3 (4th ed. 2001))).

In *Innovation Ventures*, for example, the defendant argued at the pleading stage, just as Dorman argues here, that the court should dismiss the plaintiff's trade dress claim because "the plaintiff had not stated, with specificity, the elements of the claimed trade dress." 635 F. Supp. 2d at 640. The plaintiff argued that it had satisfied its pleading burden, and that it need only produce a list of the specific elements of its trade dress in discovery. *Id.* Recognizing the pleading standard as restated in *Twombly*, and considering the Sixth Circuit's statements in *Abercrombie*, Judge Borman recognized that the plaintiff's

burden at the motion to dismiss stage was simply to put the defendant on notice of the claims against it, and that there was no requirement that the plaintiff plead its trade dress claim with further specificity. *Id.* at 641. He found sufficient the plaintiff's inclusion in the complaint of pictures of its products alongside the defendant's allegedly infringing products, writing:

> If this case proceeds further, Plaintiff will be expected to list the elements of the designs and the unique combinations it seeks to protect. *See Abercrombie*, 280 F.3d at 629. However, at the motion to dismiss stage, there is no such requirement. As such, Defendants' argument fails, and this Court denies Defendants' motion to dismiss Plaintiff's trade dress claims.

*Id.*

To be sure, requiring the plaintiff to articulate the specific elements which comprise its distinct dress serves an important purpose. As the Second Circuit stated in *Landscape Forms*:

> Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection. Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea.

113 F.3d 373, 381 (2d Cir. 1997), *cited with approval in Abercrombie*, 280 F.3d at 634-35.

But the Court has found no cases, and the parties have cited none, that require such specificity at the pleading stage. Rather, courts require a list of discrete elements only after discovery has been completed and at a time in which the court is in a position to grant relief, *e.g.*, at the summary judgment stage or on a motion seeking preliminary injunctive relief. *See, e.g.*, *Landscape Forms*, 113 F.3d at 381 (vacating preliminary injunction because plaintiff failed to articulate and support its claimed trade dress with sufficient particularity to demonstrate the requisite distinctiveness); *Abercrombie*, 280 F.3d at 635

("At the time of American's summary judgment motion, Abercrombie had not yet sought to enjoin American from using any designs. Had the case proceeded further, Abercrombie would have been expected to list the elements of the designs and the unique combinations it sought to protect, which enumeration would have enabled the district court to craft a sufficiently specific injunction had such proved warranted."); *Gen. Motors*, 468 F.3d at 415 (addressing the listing requirement in the context of plaintiff's burden at the summary judgment stage); *Innovation Ventures*, 635 F. Supp. 2d at 640-41 (following *Abercrombie*, finding plaintiff's failure to set out elements in a list is not fatal at the motion to dismiss stage since plaintiff included in the complaint pictures embodying its asserted trade dress). "A complaint is neither an injunction nor a judgment; it merely puts the defendant on notice of the plaintiff's claims." *Abercrombie*, 280 F.3d at 635. Under this line of cases, pictures of allegedly infringing trade dresses are sufficient to place a defendant on notice of the trade dress infringement claims asserted against it.

Here, Dayco has included in its complaint detailed pictures of its tensioners from both the front and back, alongside pictures of Dorman's allegedly infringing products. Dayco has also provided photographs of third-party automatic belt tensioners – which allegedly do not copy Dayco's trade dress – for the purpose of demonstrating how Dayco's trade dress is both distinct and non-functional. Although not expressly stated in the textual portions of the allegations preceding the pictures, Dayco has clearly intended to describe its protected trade dress in the tensioner by the picture below the text portion. The individual allegations, which include photographs of Dayco and Dorman's individual tensioners, as well as product numbers, sufficiently put Dorman on notice of the individual trade dress infringement claims against it. This is sufficient for the complaint to survive a motion to dismiss. Dayco will eventually be expected to list, in detail, the elements of the trade

dresses it seeks to protect.  But at this stage, the lingual and pictorial allegations in the complaint are sufficient to survive Dorman's motion.

### B.  Counts Three through Six - False or Misleading Advertising, 15 U.S.C. § 1125(a)(1)(B)

Counts three through six allege that Dorman engaged in false or misleading advertising, 15 U.S.C. § 1125(a)(1)(B), by various means: 1) using the phrase "OE Solutions" in marketing materials, thus falsely representing Dorman to be an original equipment (OE) manufacturer (count three); 2) representing that Dorman products are equivalent to original equipment (count four); 3) use of other various false or misleading statements in Dorman's promotional materials (count five); 4) implied misrepresentations about Dayco's products through Dorman's infringing use of Dayco's trade dress (count six). Dorman alleges that these counts must be dismissed for failure to sufficiently plead each and every essential element of false advertising.

A party must plead and prove the following to recover for false advertising: 1) the defendant made false or misleading statements of fact concerning his or another's product; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff. *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 323 (6th Cir. 2001).

A statement is misleading if it is "'literally true, yet deceptive, or too ambiguous to support a finding of literal falsity.'" *Id.* (quoting *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999)).

Only statements of fact are actionable; statements of opinion are not. *Certified Podiatric Physicians*, 185 F.3d at 614. Specifically, the statement at issue must be a "'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)).

    1.   <u>Count Three - Dorman Products are "Original Equipment"</u>

Dayco alleges in count three that Dorman's use of the phrase "OE Solutions" in its marketing materials falsely represents that it is a maker of original equipment. Dorman argues that the count fails because Dayco failed to sufficiently allege the following: 1) Dorman made a false or misleading statement of fact; 2) Dorman's statements deceived a substantial portion of its intended audience; 3) the statements are material; 4) a causal link between the statements and harm to Dayco.

With respect to the first issue, Dorman alleges that its use of the phrase "OE Solutions" cannot be false or misleading because the phrase is not used to convey that Dorman provides OE products. Rather, Dorman argues, the phrase is used in a comparative manner to convey that Dorman provides a less expensive alternative, or "solution" to using OE products. This type of argument is more suitable to supporting a summary judgment motion rather than a motion to dismiss. Whether the statement is misleading will be determined at a later time. Dayco has sufficiently alleged a misleading statement.[4] Disregarding Dayco's legal conclusion that the phrase "OE Solutions" is

---

[4] The phrase "OE Solutions" cannot be literally false. Unlike the hypothetical phrase "OE *Products*," "OE Solutions" asserts no fact at all, let alone a fact capable of being affirmed or denied by reference to objective standards. So, in order to be actionable, the statement "OE Solutions" must be misleading.

misleading, the complaint also contains the following well-pleaded allegations that the Court accepts as true: Dorman markets its products under the alleged trademark "OE Solutions"; the term "OE" is used in the automotive industry generally to refer to original equipment; Dorman does not sell original equipment; a trademark examiner considering Dorman's application for registration of the mark "OE Solutions" found the mark descriptive, stating "the wording immediately informs the potential purchaser of applicant's goods that the goods are 'original equipment' products. No imagination, thought, or perception is required to determine the nature of applicant's goods." Compl. ¶¶ 68-70, 73-75. These allegations sufficiently plead a misleading statement of fact. Had Dorman used the phrase "OE Alternatives," that would be a different matter. But its use of the phrase "OE Solutions" is plausibly misleading.

Regarding the second issue raised by Dorman – whether the misleading statement deceives a substantial portion of the intended audience – the Court finds that Dayco has adequately pleaded this element. Even though not expressly pleaded, this element may reasonably be inferred from the allegations that the trademark examiner believed the proposed "OE Solutions" trademark to be merely descriptive. Compl. ¶¶ 73-75. Because Dayco is seeking monetary damages on this allegedly misleading claim, Dayco will eventually have the burden of proving that a significant portion of the consumer population actually was deceived by the statement. *See Certified Podiatric Physicians*, 185 F.3d at 614 ("Where statements are [merely misleading], a violation can only be established by proof of actual deception (*i.e.*, evidence that individual consumers perceived the advertisement in a way that misled them about the plaintiff's product.")). But at the pleading stage, Dayco need not prove actual deception; well pleaded factual allegations suffice.

With respect to the third issue raised by Dorman – whether the alleged misleading statement are material – the Court finds Dayco's allegations sufficient. A misleading statement is material if it will likely influence the deceived consumer's purchasing decisions. *Id.* Dorman does not provide any specific argument as to why Dorman's "OE Solutions" phrase is not material, and focuses rather on whether the statement is false or misleading and whether the statement actually deceives the intended audience. Although the complaint nowhere states expressly that the phrase is material, one can reasonably infer from the other allegations in the complaint that use of "OE Solutions" likely influences consumers' purchasing decisions. Believing Dorman's products to be original equipment – a desirable product – would clearly influence one's purchasing decisions, especially because they cost less than OE products.

Dorman's final argument is that Dayco has failed to identify a causal link between use of the phrase "OE Solutions" and any harm to Dayco. The argument, while plausible, is based on a misreading of the complaint. Dorman argues that if consumers are deceived by the phrase, the only harm would be to original equipment suppliers. If a consumer purchased a Dorman product believing it to be original equipment, that consumer would have been in the market for an original equipment product. Dayco, as an *aftermarket* supplier (and not an original equipment supplier) would not have lost a sale because of the deception. But, Dayco has alleged that it is an original equipment manufacturer, *see* Compl. ¶ 12 (Dayco is a "top market leader in both the light and heavy duty *original equipment* and aftermarket belt tensioner business." (emphasis added)), such that Dayco would have lost sales due to the deceptive phrase. And even if it were not an original equipment manufacturer, it is reasonable to believe that a consumer in the market for aftermarket belt tensioners, enticed by the opportunity to obtain an original equipment

tensioner at or below an aftermarket tensioner price, would purchase the purported original equipment tensioner rather than the aftermarket one, thus harming Dayco's aftermarket tensioner sales. Dayco has sufficiently pleaded a causal link between the misleading statement and harm to Dayco.

Dorman is not entitled to dismissal of count three.

2. Count Four - Dorman Products are Equivalent to Original Equipment

Dayco alleges in count four that Dorman's statements that its tensioners are equivalent to original equipment tensioners constitutes false advertising. Specifically, Dayco alleges that Dorman uses the phrases "OE Quality" and "OE Performance" in its promotional materials, and that Dorman claims that its products are "as good as OE" and that "Dorman offers a premium product." Compl. ¶ 85. Dorman also uses the term "OE#" in its advertisements. *Id.* ¶ 84.[5] Dayco claims these statements are false or misleading.

Dorman raises the same four issues with this count as it does with respect to count three, but on this count, the Court finds Dorman's arguments more persuasive. Specifically, the Court finds that Dayco has failed to state a plausible claim that Dorman's use of "OE#" in its advertisement is false or misleading. The advertisement – attached to the complaint as exhibit E, and therefore proper for the Court to consider on a motion to dismiss, *see* Fed. R. Civ. P. 10(c) – uses the "OE#" term simply to identify original equipment tensioner serial numbers for the unambiguous purpose of providing customers with the proper information regarding which Dorman tensioner may replace an original equipment tensioner. The listing of parts in the advertisement clearly distinguishes Dorman tensioners from original equipment tensioners. It is implausible to believe that customers

_____

[5] Dayco's inclusion of multiple incidents of allegedly false advertising in the same count makes the Court's task more difficult.

would be led to believe that Dorman provides original equipment simply by Dorman's use of the phrase "OE#" in a comparative manner in its advertisement.

With respect to the remaining four Dorman phrases alleged by Dayco to be false or misleading, however, the Court finds Dayco has stated plausible claims with respect to three of them. Dorman argues that the four phrases are not statements of fact, but rather are opinions not actionable under the Lanham Act. The Court disagrees, with the exception of the phrase "Dorman offers a premium product." "'A statement of fact is one that (1) admits of being adjudged true or false in a way that (2) admits of empirical verification.'" *Pizza Hut, Inc.*, 227 F.3d at 496 (quoting *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir. 1986)). The phrases "OE Quality," "OE Performance," and "as good as OE" meet this definition. Specifically, the phrases suggest that Dorman tensioners meet the specifications required of OE tensioners, a fact which can be proved false through empirical verification. Dayco alleges that Dorman tensioners do not in fact meet these specifications, and Dayco provides sufficient factual support for the allegation by way of the Gates Bulletin. Dorman advertises that its tensioners are comparable to OE tensioners for the reason that they also meet "all applicable SAE specification [sic] and certifications." Compl., ex. H. According to the Gates Bulletin, however, OE specifications are significantly more demanding than SAE specifications, and Dorman tensioners failed to meet the more demanding OE specifications, and in some instances even failed to meet SAE specifications. *See* Compl., ex. N.

Moreover, answering "Yes" to the question "Are these as good as OE?" coupled with Dorman's statement that Dorman tensioners meet all SAE specifications may lead the consumer to equate SAE specifications with OE specifications, and to believe that Dorman tensioners meet the more stringent OE specifications, and are therefore of "OE Quality"

and "OE Performance."  This reasonable construction of the statements in the advertisement would be false, as Dorman products are not of the same "quality" and do not provide the same "performance" as OE products.  As a result, Dorman tensioners would not be "as good as" OE tensioners and statements to the contrary would be false.

The statement that "Dorman offers a premium product," however, is not an actionable statement of fact.  The word "premium" is vague and subjective, and the statement is not capable of being proved false through empirical verification.

Dorman's further objections to count four are without merit.  The terms and phrases have been adequately pleaded, either directly or as a reasonable inference from the allegations, as material and misleading to a substantial portion of the intended audience. Compl. ¶ 86.  Dayco has also sufficiently pleaded a causal link between Dorman's conduct and harm to Dayco.  *Id.* ¶ 87.

Because Dayco has pleaded multiple misleading statements in count four, some of which the Court found insufficient to state a false advertising claim, rather than dismissing an entire count, the Court finds itself in the awkward position of having to dismiss specific paragraphs, or sentences within paragraphs, within count four.  The Court holds that all the statements alleged in count four, with the exception of Dorman's use of "OE#" and the phrase "Dorman offers a premium product," are cognizable and will not be dismissed. Claims relating to these excepted phrases, however, will be dismissed with prejudice.

   3.   Count Five - False Advertising Generally

Dayco alleges in count five that Dorman made false or misleading statements in its advertising that lead consumers to believe that Dorman is a manufacturer of belt tensioners while Dayco is not.  Compl. ¶¶ 89, 90.  This false impression allegedly arises from the following colloquy in Dorman's materials:

Q: [Can I] wait for my current supplier to lower their price?

A: The current suppliers all buy from the same OE sources. None of them are dominant because none of them can be significantly more price competitive.

Compl., ex. H.

The Court cannot conceive of any way in which this colloquy could imply that Dorman is a manufacturer while Dayco is not. Nothing therein mentions Dayco by name, and Dorman never asserts that Dayco is one of the referenced "current suppliers." Moreover, Dayco is a *manufacturer*, and the colloquy mentions *nothing* about who manufactures tensioners; it discusses *suppliers*. The colloquy cannot support a claim for false advertisement.

Dayco also alleges that Dorman overstates its market position by stating that it has 28 tensioners, which comprise 80% of traditional aftermarket sales, when in fact, their 28-product line covers only 70% of the relevant market. Compl. ¶¶ 92. Absent from the complaint, however, is any allegation that these statements actually deceive or tend to deceive a substantial portion of the intended audience, and are material. Nor is it reasonable to infer that a difference of 10% in market coverage would influence one's decision to purchase a Dorman tensioner over a Dayco tensioner. The complaint alleges that Dorman claims that Dayco makes only 120 different tensioner models, when in reality Dayco makes 165 different models. Compl. ¶ 93. As Dorman points out, however, Dorman makes only 28 different models, so whether Dayco makes 120 or it makes 165, Dayco makes and sells at least four times as many models than does Dorman. So, while Dorman's statement regarding the breadth of Dayco's line might actually be false, Dayco has not sufficiently pleaded that the statement is material; it is not plausible that a purchaser would make the decision to purchase a Dorman tensioner over a Dayco tensioner simply because Dayco only makes 120 models rather than 165. Dayco has not

pleaded otherwise, nor is materiality reasonably inferred from allegations in the complaint.

Accordingly, count five fails to state a claim for relief and will be dismissed.

4. Count Six - False Advertising of Dayco Technology

Dayco alleges in count six that because Dayco and Dorman tensioners have an identical external appearance, the mere presence of Dorman tensioners in the aftermarket causes purchasers to wrongly believe that Dayco and Dorman tensioners incorporate identical internal mechanisms. According to Dayco, this constitutes false advertising. Compl. ¶¶ 96, 97.

Dorman first argues that Dayco has failed to allege any "commercial advertising or promotion" in which Dorman has made a false statement. 15 U.S.C. § 1125(a)(1)(B). Dorman contends that its products themselves cannot constitute an "advertisement." Dorman cites no authority for this proposition, and the Court finds no legal basis for concluding that the sale of products itself cannot constitute advertising within the meaning of the Lanham Act.

Dorman next contends that it has made no *false* statements: Dayco does not allege that Dorman says it uses Dayco technology or that Dorman is associated with Dayco in any way. Dorman *does not* contend, however, that its sale of tensioners cannot be interpreted as *misleading*, and the Court finds it plausible that, because of the outward appearance of Dorman tensioners, purchasers could believe that Dorman tensioners utilize Dayco technology, even where Dorman tensioners bear a Dorman trademark.

Dorman also contends that Dayco failed to allege that the misleading statement deceived a substantial portion of the intended audience. For Dayco to make this allegation, Dorman maintains, Dayco must show it has valid trade dresses for its tensioners. In other words, Dorman concedes that its argument rises or falls according to the viability of

Dayco's trade dress claims. Because the Court is not dismissing the trade dress claims, by Dorman's own admission, Dorman's argument in this regard is undermined. Furthermore, Dayco does in fact allege that persons reading the Gates Bulletin, and familiar with Dayco tensioners' appearance, will believe that Dayco tensioners suffer from the same technology shortfalls as do Dorman tensioners. Compl. ¶ 98. This allegation sufficiently implies deception among a substantial portion of the intended audience. Dorman's argument to the contrary relates to the ultimate merit of the false advertising claim, an argument not persuasive on a Rule 12(b)(6) motion.

Dayco has stated a claim for relief in count six.

## CONCLUSION AND ORDER

Dayco has stated claims for relief on all counts except count five, the allegation at paragraph 84 regarding Dorman's use of "OE#", and the allegation at paragraph 85 that "Dorman offers a premium product." Count five and the claims regarding the specific statements in paragraphs 84 and 85 referenced above will be dismissed with prejudice.

**WHEREFORE** it is hereby **ORDERED** that Defendant's motion to dismiss (docket no. 6) is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED THAT** count five of Plaintiff's complaint, as well as the claims of false advertising alleged paragraph 84 (Dorman's use of "OE#") and paragraph 85 ("Dorman offers a premium product") are **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 28, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 28, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager